```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOSEPH DUCZKOWSKI and<br>PENELOPE DUCZKOWSKI,<br>    Plaintiffs,<br>    v.<br><br>HYUNDAI AMERICA SHIPPING<br>AGENCY, INC. and DARIA<br>SHIPPING LIMITED, et al.,<br>    Defendants. | CIVIL NO. 08-2897(NLH)(KMW)<br><br>OPINION |

**APPEARANCES:**

MICHAEL O. PANSINI
PANSINI & MEZROW
15TH FLOOR
1525 LOCUST STREET
PHILADELPHIA, PA 19102

    On behalf of plaintiffs

JOHN R. GERAGHTY
GERAGHTY SUAREZ LLP
85 MAIN STREET
SUITE 201
HACKENSACK, NJ 07601

    On behalf of defendant Hyundai America Shipping Agency, Inc.

**HILLMAN**, District Judge

   Presently before the Court is the motion of defendant Hyundai America Shipping Agency, Inc. for summary judgment on plaintiffs' claims arising from a injuries plaintiff Joseph Duczkowski sustained while working as a longshoreman discharging cargo off the vessel M/V DARIA.[1]  For the reasons expressed below, defendant's

---

[1] Plaintiffs have also asserted claims against the shipowner, Daria Shipping Limited.  That defendant has not moved for summary judgment at this time.

motion will be granted.

## BACKGROUND

On May 22, 2005, plaintiff Joseph Duczkowski was performing his duties as a crane operator discharging cargo--plywood and steel plates--off the vessel M/V DARIA berthed at Beckett Street Terminal in Camden, New Jersey, when he slipped on oil as he descended the crane's access ladder.  At the time, the vessel was owned and operated by defendant Daria Shipping Limited, and it was under a time charter to defendant Hyundai America Shipping Agency, Inc.[2]  Plaintiff filed suit against both defendants claiming that they are liable for his injuries due to their negligence.[3]  With regard to his claims against Hyundai, plaintiffs claim that Hyundai exerted control over the vessel's maintenance, and specifically with regard to the crane, and it therefore can be held responsible for plaintiffs' injuries.

Hyundai has moved for summary judgment, arguing that the vessel owner and the crew retained responsibility for the vessel's maintenance and repair through a Time Charter agreement, and it did not otherwise assume control over its maintenance and repair. Because it was not responsible for the maintenance and repair of

---

[2] Plaintiff was an employee of Delaware River Stevedores, Inc., which was under contract with Hyundai to perform the cargo discharge.

[3] Plaintiff's wife, Penelope Duczkowski, has also advanced claims for loss of consortium.

the vessel and its cranes, Hyundai contends that it cannot be liable for plaintiffs' injuries as a matter of law. Plaintiffs have opposed Hyundai's motion.

## DISCUSSION

**A.    Jurisdiction**

Plaintiffs' complaint, originally filed in New Jersey state court, states claims for negligence. Hyundai removed plaintiffs' case to this Court, contending that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Although plaintiff is a covered worker under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. ("LHWCA"), jurisdiction has not been advanced on this basis, although it appears to also confer federal question jurisdiction over plaintiffs' claims.[4]

---

[4] The LHWCA is a longshoreman's exclusive remedy against the vessel for injuries he sustained on the vessel. Dougherty v. Navigazione San Paolo, S.P.A. Medafrica Line, 622 F. Supp. 1, 2 (3d Cir. 1984) (citing Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 40 (3d Cir. 1975)) (explaining, "The remedy provided to the longshoreman under LHWCA against the vessel, as defined in the statute, is the longshoreman's exclusive remedy against the vessel"). A time charterer can also be considered a "vessel" under the LHWCA. See id. Neither party disputes the applicability of the LHWCA, and the Court construes plaintiffs' general negligence claims as arising under the LHWCA. See 33 U.S.C. § 905(b) ("In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title . . . . The remedy provided in this subsection shall

**B.     Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or

---

be exclusive of all other remedies against the vessel except remedies available under this chapter.").

4

otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

As summarized above, Hyundai has moved for summary judgment on plaintiffs' claims arising out of the injuries Mr. Duczkowski sustained while working the crane on the M/V DARIA.  It argues that it was not involved or responsible for the crane's maintenance or repair, which purportedly caused Mr. Duczkowski's fall.  The circumstances leading to Mr. Duczkowski's fall are as follows.  During the cargo discharging operations on May 21, 2005, the Number One crane became disabled when the runner--the wire on the crane that lifts the cargo--was damaged.  The vessel's crew replaced the wire, which the crew greased prior to installation.  The vessel's crew inspected the repaired crane, and finding it operable, resumed the unloading operations.

The day after the crane's repair, Mr. Duczkowski reported to work at 10:00am for the second two-hour shift of the day and climbed the ladder to relieve the other operator.  The ladder is

encased in a ten foot diameter "tube" housing column not open to the weather.  About halfway up the ladder is an intermediate steel deck where the crane's winch is located.  When Mr. Duczkowski climbed the ladder he noticed oil on the deck around the winch.  He does not recall stepping in the oil or reporting the oil to anyone.  Mr. Duczkowski was relieved at noon, and he noticed the oil, unchanged in appearance, on his descent.  He worked again from 3:00pm until 5:00pm.  When ascending the ladder at 3:00pm, he again noticed the oil, the same condition as before.  When he shut down the crane at 5:00pm and began descending the ladder, he lost his footing and hold on the ladder, noticing that it was oily, and fell six or seven rungs to the deck.  He was injured by his fall.

   Hyundai points to two pieces of record evidence to support its contention that it cannot be held liable for Mr. Duczkowski's injuries.  First is the Time Charter itself, or the contract between the shipowner and Hyundai.  In a typical time charter, "the ship's carrying capacity is taken by the charterer for a fixed time for the carriage of goods on as many voyages as can fit into the charter period."  Dougherty v. Navigazione San Paolo, S.P.A. Medafrica Line, 622 F. Supp. 1, 3 (3d Cir. 1984).  Under such time charters, "the owner retains all control for management and navigation."  Id.  Moreover, "[i]t is well settled under admiralty law that absent an agreement to the contrary the time charterer has no control over the vessel and assumes no liability for negligence

of the crew or unseaworthiness of the vessel." Id. at 3-4 (citations omitted). A time charterer, however, can be sued by a longshoreman under the LHWCA for injuries sustained by its own negligence. Id. at 4-5; Weeks Marine, Inc. v. Hanjin Shipping, 2005 WL 1638148, *4 (D.N.J. 2005) (citations omitted) ("[C]ourts uniformly hold that in order for liability to attach to a time charterer, it is critical that there be an independent act of negligence that is the direct cause of the injury or that the time charter agreement specifically allocates the responsibilities to the time charterer.").

The second fact that Hyundai relies upon in support of its position is that the vessel's crew repaired and inspected the crane, and Hyundai did not in any way direct, supervise, control or participate in the repair of the crane.

The Time Charter in this case mirrors the standard type, wherein the owners are to "remain responsible for the navigation of the vessel, [and] acts of . . . crew," and the "[o]wners shall maintain the gear of the ship as fitted, providing gear (for all cranes) . . . [and] also providing ropes and maintaining runners, falls, slings and blocks as on board." (Def. Ex. E, Clauses 26 and 22.) Based on these clauses, Hyundai argues that it is the vessel's crew that is responsible for the maintenance and repair of the cranes, and they undertook that responsibility to repair crane Number One, which appears to have caused Mr. Duczkowski's injuries.

7

This is further supported by the fact that Hyundai did not in any way direct, supervise, control or participate in the repair of the crane. Accordingly, Hyundai argues that it cannot be held liable for Mr. Duczkowski's injuries.

Plaintiffs oppose Hyundai's position for two reasons.[5] First, plaintiffs argue that summary judgment cannot be entered because the Time Charter provided as the exhibit to Hyundai's motion is only signed by the owners, and therefore disputed facts exist as to whether this document is the actual Time Charter governing the time charter. This argument is without merit. Plaintiffs were provided with this document during discovery and have never before

---

[5] In one paragraph of their opposition brief, plaintiffs also make the argument that the shipowner's cross-claims against Hyundai for contribution and indemnification show that because the shipowner believes that Hyundai may be liable to it for plaintiffs' injuries, it proves that Hyundai can be liable to plaintiffs. This argument is meritless. First, plaintiffs' argument presumes the validity of the shipowner's cross-claims. The Court's finding that Hyundai is not liable to plaintiffs on their claims obviates the shipowner's contribution claim. See Cherry Hill Manor Associates v. Faugno, 861 A.2d 123, 128 (N.J. 2004) (internal citations and quotations omitted) ("It is well settled that the true test for joint tortfeasor contribution is joint liability and not joint, common or concurrent negligence. The test's core proposition may be stated succinctly: It is common liability at the time of the accrual of plaintiff's cause of action which is the sine qua non of defendant's contribution right."). Second, even if Hyundai may be contractually liable to the shipowner for plaintiffs' injuries, that does not translate into imposing liability onto Hyundai directly for plaintiffs' injuries. See Dougherty v. Navigazione San Paolo, S.P.A. Medafrica Line, 622 F. Supp. 1, 5 (3d Cir. 1984) (explaining that a shipowner and time charterer may have a contractual indemnification provision separate from the shipowner's and time charterer's duties to a longshoreman).

challenged its authenticity.  Moreover, plaintiffs have not provided any evidence to demonstrate that another "true" Time Charter exists and contains different terms from the document provided here.  Finally, in response to plaintiffs' argument, Hyundai has provided a declaration of Hyundai's Deputy General Manager/Operations, Dong Keun Choi, who confirms that the Time Charter provided as an exhibit to Hyundai's motion and exchanged during discovery is the true and complete copy of the contract between the vessel owner and Hyundai.  Plaintiffs have not provided the Court with any reason to dispute Hyundai's representation.

The second basis for plaintiffs' opposition to Hyundai's motion is their claim that Hyundai did in fact control and direct the repair of the crane, thus making Hyundai liable for its negligence in that regard.  To support that contention, plaintiffs point to the deposition testimony of Hyundai's Port Captain Choi, who answered the question, "What did you request of the crew?" by stating, "To fix the crane."  (Pl. Ex. A.)  Plaintiffs argue that this statement, and other statements acknowledging a supervisory role in discharging the cargo, shows that Hyundai's order to fix the crane establishes its part in the negligent repair.

This argument is also unavailing.  It is undisputed that Captain Choi, serving as the Port Captain, planned the cargo discharge from his office in New Jersey, and not on the vessel or from even the pier.  He hired the discharging stevedores and

9

reviewed the discharge invoices.  With regard to the cranes, it is undisputed that Captain Choi did not inspect the cranes when the vessel arrived at the discharge port, and he simply asked the captain or crew if the cranes were functioning.  As part of his general duties to insure that discharge operations would happen without delay, if a crane was not functioning he would ask that the crew to repair it.  Additionally, it is undisputed that the vessel's chief mate, Captain Tomasz Molenda, inspected the crane column before cargo operations started to verify that the crane was safe to use, and that he testified that it is the vessel's responsibility to ensure the safety of the work done aboard the vessel.

Thus, the undisputed evidence in the record shows that the vessel's crew endeavored to fix a broken crane, and in doing so, apparently spilled oil on the crane's intermediate decking, which ended up on the ladder, causing Mr. Duczkowki's fall and injuries.  The undisputed evidence also shows that Hyundai had no involvement in the inspection or repair of the crane.  The only evidence showing Hyundai's involvement in the crane functioning is a general command from the port captain to repair any broken cranes in order to facility the discharge of its cargo.  This is insufficient to establish Hyundai's liability for plaintiffs' injuries.  See, e.g., Weeks Marine, 2005 WL 1638148 at *4 (where time charterer provided incorrect berthing instructions, which forced the vessel to change

10

berths, and during that move, an accident occurred, court rejected holding time charterer liable for resulting accident).

In sum, plaintiffs' claims against Hyundai fail for two reasons. First, plaintiffs have no evidence to show that Hyundai committed negligence in its duties as time charterer. Although it asked, through the port captain, whether the cranes were operable to discharge its cargo, and if not, asked that they be fixed, Hyundai did not have any direct involvement, control, or decision-making in the repair and inspection of the Number One crane. The Court has not been provided with any facts to contradict that the vessel's crew greased the new runner wire prior to installation, and apparently spilled and did not clean up the grease, which eventually caused Mr. Duczkowski's fall and injuries. Hyundai had no part in those actions.

Second, plaintiffs have not pointed to any provision in the Time Charter that would hold Hyundai liable for the crew's negligence, despite Hyundai's own lack of culpability. As noted above, it is well-settled admiralty law that absent an agreement to the contrary, the time charterer has no control over the vessel and assumes no liability for negligence of the crew.

Consequently, because plaintiffs cannot establish Hyundai's negligence or its assumption of liability for plaintiffs' injuries, summary judgment must be entered in Hyundai's favor on plaintiffs'

11

claims against it.[6]

An appropriate Order will be entered.


Date: December 20, 2010          s/ Noel L. Hillman

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

[6] Without specific argument to support its motion, Hyundai has also moved for summary judgment on Daria Shipping Limited's cross-claims against it. As noted above, the grant of summary judgment in favor of Hyundai on plaintiffs' claims obviates Daria's cross-claims for contribution. See, *supra*, note 5. Hyundai, however, has not provided any argument to support the dismissal of Daria's indemnification cross-claim. Although it does not appear from the Time Charter that such an identification provision exists, Hyundai must affirmatively make that showing, and additionally show that no other contract for indemnification exists between it and Daria. See Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 159 A.2d 97, 110 (N.J. 1960) (explaining that the right of indemnity "is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable").